UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA/ SEATTLE

| | |
|---|---|
| AMANDA B., <br><br> Plaintiff, <br><br> v. <br><br> ACTING COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Case No. 2:22-cv-01754-TLF <br><br> ORDER REVERSING AND REMANDING FOR AWARD OF BENEFITS |

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) for judicial review of defendant's denial of plaintiff's application for supplemental security income ("SSI"). Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. Dkt. 3. Plaintiff challenges the ALJ's decision finding that plaintiff was not disabled. Dkt. 5, Complaint.

In February 2016, plaintiff filed an application for supplemental security income disability benefits, alleging a disability onset date of September 1, 2012. AR 296-311. In January 2018 a hearing was held in front of Administrative Law Judge ("ALJ") C. Howard Prinsloo. AR 37-62. In July 2018, ALJ Prinsloo issued a decision finding that plaintiff was not disabled. AR 136-51. In May 2019 the Appeals Council ("AC") vacated the ALJ's decision and remanded the case for further consideration. AR 154-55.

In March 2020, a second hearing was held in front of ALJ M.J. Adams. AR 63-

100. In April 2020, ALJ Adams issued a decision finding that plaintiff was not disabled. AR 16-36. The AC declined review. AR 1-5. Plaintiff appealed the decision to the federal district court. AR 2774-78.

Plaintiff filed a new application for SSI disability benefits on February 26, 2021, while the matter was still pending in federal court. AR 2811. On November 5, 2021, the agency informed plaintiff that she had been awarded benefits and met all of the rules to be eligible for SSI based on being disabled as of February 26, 2021.

In June 2021, United States Magistrate Judge Michelle L. Peterson reversed the April 2020 decision of ALJ Adams and remanded for further proceedings. AR 2779, 2780-90. In August 2022, ALJ Evangeline Mariano-Jackson conducted a hearing (the third hearing on the 2016 application). AR 2645-77. In September 2022, ALJ Mariano-Jackson issued a decision finding that plaintiff was not disabled from February 9, 2016 to February 25, 2021. AR 2617-44. On November 19, 2022 the ALJ's decision became final.

ALJ Mariano-Jackson found that plaintiff had the following severe impairments: degenerative disc disease of the cervical and lumbar spine, neuropathy, obstructive sleep apnea, anemia, obesity, major depressive disorder, post-traumatic stress disorder (PTSD), panic disorder, opioid use disorder, and cocaine use disorder. AR 2619-20. Despite these severe impairments, the ALJ found at step five that plaintiff had the residual functional capacity to perform light work with additional restrictions and would be able to work at potential occupations such as a housekeeper, or cafeteria attendant. AR 2633-34.

STANDARD

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of Social Security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017) (internal citations omitted). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019) (internal citations omitted). The Court must consider the administrative record as a whole. *Garrison v. Colvin,* 759 F.3d 995, 1009 (9th Cir. 2014). The Court also must weigh both the evidence that supports and evidence that does not support the ALJ's conclusion. *Id.* The Court may not affirm the decision of the ALJ for a reason upon which the ALJ did not rely. *Id.* Rather, only the reasons identified by the ALJ are considered in the scope of the Court's review. *Id.*

DISCUSSION

**1. Medical Testimony**

Plaintiff argues that the ALJ erred by assigning little weight to medical opinions of David Widlan, Ph.D., and David Mashburn, Ph.D. Dkt. 13, Opening Brief, at 3-11. The Commissioner contends that the ALJ had substantial evidence upon which to find that plaintiff was not disabled, based upon the variability in her symptoms and the longitudinal record. Dkt. 18, Defendant's Brief, at 10.

Plaintiff filed their application[s] prior to March 27, 2017, therefore under the applicable regulations, an ALJ must provide "clear and convincing" reasons to reject the uncontradicted opinions of an examining doctor, and "specific and legitimate" reasons to

reject the contradicted opinions of an examining doctor. *See Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995). When a treating or examining physician's opinion is contradicted, the opinion can be rejected "for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* (citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

An examining physician's opinion is "entitled to greater weight than the opinion of a non-examining physician." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (citations omitted); *see also* 20 C.F.R. § 404.1527(c)(1) ("Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you"). A non-examining physician's or psychologist's opinion may not constitute substantial evidence by itself sufficient to justify the rejection of an opinion by an examining physician or psychologist. *Lester,* 81 F.3d at 831 (citations omitted). However, "it may constitute substantial evidence when it is consistent with other independent evidence in the record." *Tonapetyan v. Halter,* 242 F.3d 1144, 1149 (9th Cir. 2001) (*citing Magallanes, supra*, 881 F.2d at 752). "In order to discount the opinion of an examining physician in favor of the opinion of a non-examining medical advisor, the ALJ must set forth specific, *legitimate* reasons that are supported by substantial evidence in the record." *Nguyen v. Chater*, 100 F.3d 1462, 1466 (9th Cir. 1996) (citing *Lester,* 81 F.3d at 831).

   a. **Dr. Widlan**

ALJ Mariano Jackson assigned little weight to Dr. Widlan's opinion, finding it inconsistent with the record. AR 2631-32. As support, the ALJ noted that plaintiff was able to follow three-stage commands, recall three out of three objects immediately and

after a delay, cooperated with medical providers, participated in group therapy, showed normal concentration, performed serial calculations correctly, and spelled "world" correctly forwards and backwards. AR 2632.

Plaintiff challenges this conclusion, alleging that the ALJ failed to provide specific and legitimate reasons for rejecting Dr. Widlan's opinion because she relied on three mental status examinations in a five-year period and failed to take into account the varying nature of mental health symptoms. Dkt. 13 at 7. Defendant responds that the ALJ properly relied on the longitudinal record in evaluating Dr. Widlan's opinion. Dkt. 18 at 10-11.

On February 29, 2020, Dr. Widlan wrote a report based on a clinical interview and mental status examination, and a review of plaintiff's medical records. Dkt. 2601-13. Dr. Widlan diagnosed plaintiff with Post-Traumatic Stress Disorder, Panic Disorder, and Major Depressive Disorder. AR 2606. In the Mental Status Examination, he noted that plaintiff was agitated and tearful, exhibited significant concentration deficits, and appeared likely to have deficits in judgment during periods of stress. AR 2604-05. Dr. Widlan also noted that plaintiff was able to make goal-oriented statements, was able to interpret a basic abstraction, and was able to complete the serial three calculations but not the serial sevens. AR 2604.

Dr. Widlan opined that the Mental Status Examination indicated adequate or moderate impairment in memory, with deficits in concentration and social reasoning. AR 2606. He concluded that plaintiff could accept simple instruction; is unable to accept moderately complex tasks; cannot persist with adequate pace; would become easily overwhelmed by tasks; is unable to consistently negotiate simple stressors on a routine

basis; would be prone to agitation and potentially paranoia; has significant deficits in activities of daily living outside of a basic routine; is unable to accept appropriate supervisor criticism; and even simple, repetitive tasks would lead to an intensification of her symptoms. AR 2606.

On March 11, 2020, Dr. Widlan submitted a Medical Source Opinion Addendum where he opined that while plaintiff has average pre-morbid cognitive functioning, the severity of her emotional difficulties impacts all areas of her life including her ability to persist in an employment setting and even if limited to simple repetitive tasks, she would be prone to behavioral and emotional disturbances. AR 2607-2611. Dr. Widlan opined that plaintiff would not be able to perform the following tasks or functions on a regular, reliable, and sustained schedule: understand and remember detailed instructions; carry out detailed instructions; maintain attention and concentration for extended periods of time; perform activities within a schedule; maintain regular attendance; sustain ordinary routine without special supervision; work in coordination with or proximity to others without being distracted by them; complete a normal workday and workweek without interruptions from psychological based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; ability to interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; respond appropriately to changes in the work setting; set realistic goals or make plans independently of others. AR 2607-2608.[1]

---

[1] Dr. Widlan also found, in his opinion dated 3-11-2020, that plaintiff would have noticeable difficulty more than 20 percent of the work day or work week, with respect to carrying out short and simple instructions; being punctual; making simple work-related decisions; asking simple questions or requesting assistance; maintaining socially

A finding that a physician's opinion is inconsistent with the medical record may serve as a specific and legitimate reason. *See* 20 C.F.R.§§ 404.1527(c)(4), 416.927(c)(4); *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014).

Yet, the ALJ does not explain how the ability to follow a three step-command (in the opinion, Dr. Widlan states the three-step command was to pick up a tissue, tear it, and then place it on the table – AR 2605), recall three objects after a five-minute delay (AR 2604), perform serial calculations (Dr. Widlan noted that she could perform serial "3's" but not serial "7's"), and spell "world" are inconsistent with Dr. Widlan's opinion. AR 2606. After assessing her performance in mental status examinations, Dr. Widlan found that behavioral and emotional disturbances would cause plaintiff to be unable to perform many work-related functions. AR 2606.

The ALJ also cited plaintiff's ability to attend group therapy appointments and cooperate with medical providers as inconsistent with Dr. Widlan's conclusion that plaintiff would be unable to interact with coworkers, the public, or supervisors. AR 2632. The ALJ does not explain how instances where medical providers noted that plaintiff was "cooperative" contradict Dr. Widlan's opinion that plaintiff would "have difficulty interacting with supervisors, co-workers, and the public" which he follows with "[e]ven if she was limited to simple, repetitive tasks, she would be prone to behavioral and emotional disturbances." AR 2611. In fact, this opinion is supported by the treatment notes that the ALJ cited; for example, the ALJ cites a note that plaintiff's attitude is "cooperative" but the note further states that she was "plaintive and crying the entire

---

appropriate behavior and basic neatness and cleanliness; being aware of normal hazards and taking appropriate precautions; and travel in unfamiliar places or use of public transportation. AR 2607-2608.

1   exam." AR 2632. Plaintiff is also noted as "tearful" in the group therapy notes cited by

2   the ALJ, and observed to be "cooperative", while additional notes show that she

3   exhibited "Poor Eye Contact" "Impaired" insight/ judgment, was assessed as displaying

4   "Increased irritability". AR 1985-86. *see Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir.

5   2014) (ALJ may not "cherry-pick[ ]" items from treatment record without considering

6   them in context of "diagnoses and observations of impairment").

7         This evidence does not support the ALJ's conclusion. Furthermore, the examples

8   that the ALJ provided are from a medical appointment setting, which is distinct from a

9   full-time work environment. The medical record shows that even when plaintiff was

10  "cooperative" she displayed "emotional disturbances" which would not be appropriate in

11  a work setting. Being able to communicate and act appropriately in a medical

12  appointment or therapy session is not an activity that is easily transferable to the more

13  grueling environment of a full-time workplace. *See, Orn v. Astrue,* 495 F.3d 625, 639-

14  640 (9th Cir. 2007); *see also,* 20 C.F.R. 404, Subpart. P, App'x 1, § 12.00 (Mental

15  Disorders) Subsections (C)(6)(b) ("Supportive situations. Your ability to complete tasks

16  in settings that are highly structured, or that are less demanding or more supportive

17  than typical work settings does not necessarily demonstrate your ability to complete

18  tasks in the context of regular employment during a normal workday or work week.").

19        Therefore, the ALJ did not provide specific and legitimate reasons for discounting

20  Dr. Widlan's opinion.

21        **b. Dr. Mashburn**

22        ALJ Mariano-Jackson assigned little weight to Dr. Mashburn's opinion, finding

23  that the longitudinal examination findings were consistent with the moderate limitation in

8

the areas of mental functioning, but the marked limitations were inconsistent with the evidence of record. AR 2631. As support for this conclusion, the ALJ noted that plaintiff's level of functioning varied from year to year. AR 2631. The ALJ cited to evidence in the record that plaintiff was able to perform serial calculations correctly, spelled "world" correctly forward and backward, followed three-stage commands and recalled three out of three objects immediately and after a delay.

Plaintiff challenges this conclusion, arguing that the ALJ failed to acknowledge the cyclical nature of plaintiff's mental impairments and focused on bits of plaintiff's mental status examinations that supported the ALJ's conclusion while ignoring the more pronounced evidence of abnormalities. Dkt. 13 at 11. The defendant responds that the ALJ properly relied on evidence showing that longitudinally plaintiff's mental status examinations generally showed a cooperative attitude, normal thought process, orientation, intelligence, memory, concentration, insight, and judgment which undercut opinions that plaintiff was markedly limited in areas such as task completion, concentration, and getting along with others. Dkt. 18 at 10-11.

Dr. David Mashburn examined plaintiff on three occasions for the State Department of Social and Health Services in August 2015, in August 2019, and in August 2020. AR 504-10, 2545-51, and 3062-68.

On August 27, 2015, Dr. Mashburn conducted a psychological/ psychiatric evaluation and diagnosed plaintiff with Depression- Marked. AR 505. He opined that she had a marked limitation in the following Basic Work Activities: communicate and perform effectively in a work setting; maintain appropriate behavior in a work setting;

complete a normal work day without interruptions from psychologically based symptoms. AR 506.

He assigned an Overall Severity Rating of "Marked." *Id*. He recommended for her to continue all mental health treatment and opined that if she were to go to work she would "be overwhelmed quickly and leave." AR 507.

On August 13, 2019, Dr. Mashburn conducted a second evaluation; he noted that plaintiff's depression had improved slightly and did not include any "marked" limitations. AR 2546. He opined that plaintiff may be able to work 30-40 or more hours per week if she did not have so many daily responsibilities and stressors with her children. AR 2548.

On August 18, 2020, Dr. Mashburn conducted a third evaluation and diagnosed plaintiff with depression- severe and noted PTSD symptoms. AR 3063. He opined that she had a marked limitation in the following Basic Work Activities: perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision; complete a normal work day and work week without interruptions from psychologically based symptoms. AR 3063. He assigned an Overall Severity Rating of "moderate." AR 3064. He recommended long term treatment for depression. AR 3064.

The ALJ's errors with respect to Dr. Widlan's opinion, are repeated in the ALJ's decision discounting Dr. Mashburn's opinions. The ALJ failed to explain how plaintiff's ability to spell "world," perform serial calculations, follow three stage commands, and recall objects after a delay contradicted with Dr. Mashburn's opinion that plaintiff would have a marked limitation in basic work activities such as maintaining regular attendance

in the workplace or completing a normal work day without interruptions from psychologically based symptoms.

Additionally, the ALJ did not properly take into account the waxing and waning of mental health symptoms in evaluating Dr. Mashburn's opinions. The ALJ erred by selectively noting records of plaintiff's improvement, rather than considering the medical record as a whole. *See Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014) (mental health symptoms may "wax and wane in the course of treatment").

### c. Harmless Error

An error that is inconsequential to the non-disability determination is harmless. *Stout v. v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006). If the errors of the ALJ result in a residual functional capacity (RFC) that does not include relevant work-related limitations, the RFC is deficient and the error is not harmless. *Id* at 1052, 1054*; see also, Carmickle v. Comm'r. Spc. Sec. Admin.,* 533 F.3d 1155, 1160 (9th Cir. 2008); *Embrey v. Bowen,* 849 F.2d 418, 422-423 (9th Cir. 1988); *Stramol-Spirz v. Saul,* 848 Fed. Appx. 715, 718 (9th Cir. 2021) (unpublished).

If the ALJ had properly evaluated the opinions of Dr. Widlan and Dr. Mashburn, the ALJ likely would have determined plaintiff's RFC to have more limitations, and that would have changed the ALJ's overall determination of nondisability, Accordingly, the Court finds that the error in evaluating these opinions was not harmless.

### 2. Other witness testimony

#### a. Ms. Kranz and Nurse Gaebler.

On January 1, 2016, Heather Kranz, MA completed WorkFirst documentation and stated that plaintiff's depression symptoms include a marked limitation in the ability

to carry out basic tasks, and she had difficulty keeping appointments and completing jobs, concentrating, and retaining information. AR 511. She also stated that plaintiff was overwhelmed easily which caused her to shut down and fail to complete tasks she started. *Id*. She stated that plaintiff's conditions would limit her ability to work for 48 months. AR 512. On August 23, 2016, Debbie Gaebler, ARNP[2] also completed WorkFirst documentation and reached the same conclusions as Ms. Kranz. AR 1474-1476.

      The ALJ assigned little weight to the opinions of Ms. Kranz and Nurse Gaebler as inconsistent with the longitudinal record, which she stated did not support a marked limitation. AR 2630. As support for this conclusion, the ALJ cited treatment records from Sound Mental Health which showed plaintiff was alert and engaged with logical thought processes; Treatment records from Nurse Gaebler showed plaintiff "doing OK" and included findings of cooperative behavior, interactive social contact, full or appropriate affect, normal speech, normal or intact judgment, logical and organized though process, and intact memory and cognition; Nurse Gaebler deemed plaintiff "stable on current meds"; plaintiff was able to follow three-stage commands, recall three out of three objects immediately and after a delay, repeated six digits forward and three backwards, performed serial calculations correctly, and spelled "world" correctly forwards and backwards; and providers described her as cooperative. AR 2630.

      Plaintiff argues that the ALJ erred by reasoning that the longitudinal record was inconsistent with Ms. Kranz and Nurse Gaebler's opinions, citing the prior district court

---

[2] Because plaintiff filed her application before March 27, 2017, Nurse Gaebler is not considered an "acceptable medical source". *See* 20 C.F.R § 404.1502(a)(7).

opinion which found that this was not a germane reason to reject the opinions of Ms. Kranz and Nurse Gaebler. Dkt. 13 at 9. Plaintiff additionally argues that the ALJ failed to take into account the variability of her mental health symptoms. *Id*. The defendant responds that "[p]laintiff's alternative interpretation if the medical opinions is insufficient to justify overturning the ALJ's decision." Dkt. 18 at 13.

When evaluating opinions from non-acceptable medical sources such as a therapist or a family member, an ALJ may expressly disregard such lay testimony if the ALJ provides "reasons germane to each witness for doing so." *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010) (*quoting Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly link his determination to those reasons," and substantial evidence supports the ALJ's decision. *Lewis v. Apfel,* 236 F.3d 503, 511 (9th Cir. 2001). The ALJ also may "draw inferences logically flowing from the evidence." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).

For the same reasons that the ALJ erred in evaluating Dr. Widlan's and Dr. Mashburn's opinions, she erred in evaluating the testimony of Ms. Kranz and Nurse Gaebler. The evidence cited by the ALJ to support her conclusion does not undermine these witnesses' opinions, but rather further demonstrates the varying nature of mental health symptoms. Therefore, the ALJ failed to provide germane reasons for disregarding their testimony.

b. **Harmless error**

An error that is inconsequential to the non-disability determination is harmless. *Stout v. v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006). If the errors of the ALJ result in a residual functional capacity (RFC) that does not include relevant work-related limitations, the RFC is deficient and the error is not harmless. *Id* at 1052, 1054; *see also, Carmickle v. Comm'r. Spc. Sec. Admin.,* 533 F.3d 1155, 1160 (9th Cir. 2008); *Embrey v. Bowen,* 849 F.2d 418, 422-423 (9th Cir. 1988); *Stramol-Spirz v. Saul,* 848 Fed. Appx. 715, 718 (9th Cir. 2021) (unpublished).

Had that ALJ properly credited Ms. Kranz's and Nurse Gaebler's opinions, it likely would have resulted in more limitations and a more restrictive RFC determination. Therefore, the ALJ's errors in evaluating these opinions were not harmless.

3. **Plaintiff's statements regarding subjective symptoms**

a. **Plaintiff's testimony**

Plaintiff challenges the ALJ's determination that her statements regarding the intensity, persistence, and limiting effects of her symptoms were not inconsistent with the medical record, alleging that the ALJ failed to provide clear and convincing reasons supported by substantial evidence for discounting plaintiff's testimony about her mental impairments. Dkt. 13 at 11-16. The defendant responds that the ALJ properly took into account plaintiff's daily activities and the objective medical evidence in making her determination. Dkt. 18 at 14-15.

The ALJ's determinations regarding a claimant's statements about limitations "must be supported by specific, cogent reasons." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (*citing Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990)). In

assessing a plaintiff's credibility, the ALJ must determine whether plaintiff has presented objective medical evidence of an underlying impairment. If such evidence is present and there is no evidence of malingering, the ALJ can only reject plaintiff's testimony regarding the severity of his symptoms for specific, clear and convincing reasons. *Ghanim v. Colvin,* 763 F.3d 1154, 1163 (9th Cir. 2014) (*citing Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)).

Inconsistency with the objective evidence may serve as a clear and convincing reason for discounting a claimant's testimony. *Regennitter v. Commissioner of Social Sec. Admin.*, 166 F.3d 1294, 1297 (9th Cir. 1998). But an ALJ may not reject a claimant's subjective symptom testimony "*solely* because the degree of pain alleged is not supported by objective medical evidence." *Orteza v. Shalala*, 50 F.3d 748, 749-50 (9th Cir. 1995) (internal quotation marks omitted, and emphasis added); *Byrnes v. Shalala*, 60 F.3d 639, 641-42 (9th Cir. 1995) (applying rule to subjective complaints other than pain). Here, the ALJ failed to give any specific reasons for rejecting plaintiff's testimony about her mental or physical health limitations. AR 2624-2627. The ALJ did not give specific, cogent reasons for rejecting plaintiff's testimony; the ALJ simply summarized mental-health treatment notes during the relevant period. Because the Court has already determined that the ALJ erred in evaluating the medical record, this is not a clear and convincing reason for rejecting plaintiff's testimony.

The ALJ concluded that the degree of plaintiff's reported limitations was not supported because "[d]espite her symptoms she cared for her children, drove frequently during the day, and performed daily activities. She also did not require any emergency treatment or hospitalizations for her mental health impairments." AR 2633. Disability

claimants should not be penalized for attempting to lead normal lives in the face of their limitations. *Diedrich v. Berryhill*, 874 F.3d 634, 643 (9th Cir. 2017) ("House chores, cooking simple meals, self-grooming, paying bills, writing checks, and caring for a cat in one's own home, as well as occasional shopping outside the home, are not similar to typical work responsibilities."); *see Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998), citing *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir.1987) (noting that a disability claimant need not "vegetate in a dark room" in order to be deemed eligible for benefits).

In the most recent hearing, plaintiff testified that during the relevant period she had racing of the heart, and experienced overheating, nervousness, depression, panic, and crying – she experienced such symptoms about twice per day, approximately five days out of the week. AR 2653, 2663. She also testified that after dropping her children off at school she would come home and get back in bed before trying to do some house work and picking her children up from school. AR 2655. She testified that she had difficulty completing or starting household tasks and could only continue for about 15 minutes at a time. AR 2657, 2666. She stated that four days per week her symptoms were so bad that she would not be able to do any of her daily activities. AR 2665. Plaintiff's daily activities do not undermine her testimony about her limitations and are not transferrable to a work place where she would not be able to go back to bed or face frequent interruptions from her symptoms. Therefore, this was not a clear and convincing reason for rejecting plaintiff's testimony.

b. **Harmless error**

An error that is inconsequential to the non-disability determination is harmless. *Stout v. v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006)). If the errors

of the ALJ result in a residual functional capacity (RFC) that does not include relevant work-related limitations, the RFC is deficient and the error is not harmless. *Id; see also, Carmickle v. Comm'r. Spc. Sec. Admin.,* 533 F.3d 1155, 1160 (9th Cir. 2008); *Embrey v. Bowen,* 849 F.2d 418, 422-423 (9th Cir. 1988); *Stramol-Spirz v. Saul,* 848 Fed. Appx. 715, 718 (9th Cir. 2021) (unpublished).

The ALJ's determination that plaintiff's testimony about her mental health limitations was not credible resulted in a less restrictive RFC assessment; plaintiff's testimony – if properly evaluated – would have supported questions to the vocational expert ("VE") that would have included more severe limitations. The RFC was therefore not supported by appropriate testimony from the VE and the ALJ's error in assessing plaintiff's testimony was not harmless.

4. **Whether the Court should reverse with a direction to award benefits**

"'The decision whether to remand a case for additional evidence, or simply to award benefits[,] is within the discretion of the court.'" *Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)). If an ALJ makes an error and the record is uncertain and ambiguous, the court should remand to the agency for further proceedings. *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017). Likewise, if the court concludes that additional proceedings can remedy the ALJ's errors, it should remand the case for further consideration. *Revels*, 874 F.3d at 668.

The Ninth Circuit has developed a three-step analysis for determining when to remand for a direct award of benefits. Such remand is generally proper only where

"(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed

17

>to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand."

*Trevizo*, 871 F.3d at 682-83 (quoting *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014)).

The Ninth Circuit emphasized in *Leon* that even when each element is satisfied, the district court still has discretion to remand for further proceedings or for award of benefits. *Leon*, 80 F.3d at 1045.

Here, plaintiff asks that the Court remand for an award of benefits based on the ALJ's errors in evaluating the medical opinion evidence and plaintiff's subjective testimony. The Court has found several errors in the ALJ's evaluation of the opinions of Dr. Widlan, Dr. Mashburn, Ms. Kranz, Nurse Gaebler, and plaintiff's statements about symptoms and limitations, several of which repeated errors of the prior ALJ in the Commissioner's previous decision.

The Court is mindful that, in light of the existing finding that plaintiff was disabled as of February 26, 2021, a remand for further proceedings in this case would be of limited utility, as no new testimony or medical evaluations regarding plaintiff's condition during the period at issue (February 9, 2016 to February 25, 2021) would be forthcoming; providing another opportunity to assess improperly evaluated evidence does not qualify as a remand for a "useful purpose" under the first part of the credit as true analysis. *Garrison*, 759 F.3d at 1021-22, (citing *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("Allowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication.")).

If the opinions of Drs. Widlan and Mashburn, and Ms. Kranz and Nurse Gaebler, were credited as true, particularly Dr. Widlan's opinion that even simple, routine tasks would lead to intensification in plaintiff's symptoms, the ALJ would be required to find plaintiff disabled on remand. AR 2606; see Lingenfelter v. Astrue, 504 F.3d 1028, 1041 (9th Cir. 2007) ("[W]e will not remand for further proceedings where, taking the claimant's testimony as true, the ALJ would clearly be required to award benefits."). The VE testified that if an individual were absent on an irregular basis two or more days per month, that person would not be able to sustain employment. AR 2671-2672. The VE also stated that if an individual were taking breaks once or twice a day at irregular intervals – outside of normal breaks – due to uncontrollable panic attacks, this would likely preclude full-time employment. AR 2674.

Accordingly, remand for an award of benefits is the appropriate remedy.

CONCLUSION

Based on the foregoing discussion, the Court concludes the ALJ improperly determined plaintiff to be not disabled. Therefore, the ALJ's decision is reversed and remanded for a calculation of an award of benefits.

Dated this 26th day of September, 2023

Theresa L. Fricke
United States Magistrate Judge